*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 23, 2025
3:14 PM

Plaintiff-Appellant,

v

No. 372673
Ionia Circuit Court
LC No. 2024-019037-FC

LEE LEVAR BLUNTSON,

Defendant-Appellee.

Before: CAMERON, P.J., and REDFORD and GARRETT, JJ.

PER CURIAM.

In this interlocutory appeal, the prosecution appeals by leave granted[1] the trial court's order granting defendant's motion for a finding of entrapment. Defendant was charged as a fourth-offense habitual offender, MCL 769.12; with possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*); possession of two other controlled substances, MCL 333.7403(2)(a)(*v*); and resisting and obstructing a police officer, MCL 750.81d(1). Defendant's charges stem from his travel to Ionia County to deliver methamphetamine, preceded by his text-message communications with a confidential informant ("CI") for the sale of the drugs. As part of their communication leading up to the sale, the CI offered defendant sexual favors in exchange for the methamphetamine. On appeal, the prosecution argues the trial court erred by granting defendant's motion for a finding of entrapment. Because we do not believe the trial court's decision was clearly erroneous for the reasons stated in this opinion, we disagree and affirm.

## I. BACKGROUND

This appeal arises out of defendant's arrest in February 2024 at a motel. Defendant went to the motel at the text-message request of a CI who was in police custody at the Ionia County Jail.

---

[1] *People v Bluntson*, unpublished order of the Court of Appeals, entered March 17, 2025 (Docket No. 372673).

At an evidentiary hearing on defendant's motion for a finding of entrapment, the trial court heard testimony from Deputy Joshua Vroon of the Ionia County Sheriff's Office and the CI.

The CI had contacted Deputy Vroon while the CI was in jail, seeking to trade information for more lenient treatment. Deputy Vroon and the CI went to an interview room, and the CI had her cell phone returned to her. Deputy Vroon then had the CI send text messages to defendant while Deputy Vroon approved, or at least monitored, the content of the messages.

The CI told defendant that she "had the money she owed him" and said that she "would like to grab another one" from defendant. The CI explained in her testimony that she owed money to defendant for an ounce of methamphetamine and that she was asking defendant to sell her another ounce of methamphetamine. Defendant was initially receptive to the CI's request to purchase drugs, but at one point, he said that the CI was "sounding like the police" and stopped responding to the CI's messages. The CI then texted defendant that she would give defendant "something from [her] for all the trouble," indicating a potential sexual encounter, and defendant quickly responded that he would come to the motel. The CI continued to send sexual messages to defendant throughout the evening until his arrest at the motel. Deputy Vroon's subsequent search of defendant's cell phone revealed text conversations with people other than the CI about selling narcotics, hiring prostitutes, and exchanging sex for drugs.

At the conclusion of the hearing, the trial court found that defendant had proven by a preponderance of the evidence that he had been entrapped because the police impermissibly induced him to deliver methamphetamine. Rather than dismiss defendant's charges, the trial court stayed the proceedings at the prosecution's request. This appeal followed.

## II. STANDARD OF REVIEW

This Court has recently clarified the proper standard of review for claims of entrapment. "[F]actual findings are reviewed for clear error, questions of law are reviewed de novo, and the trial court's ultimate ruling on the issue of entrapment is reviewed for clear error." *People v Jade*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365951); slip op at 6. Clear error exists if we are "left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 498; 647 NW2d 480 (2002). Defendant bears the burden of establishing by a preponderance of the evidence that he was entrapped. *Id*.

## III. ANALYSIS

The prosecution argues that the trial court erred when it found that defendant proved by a preponderance of the evidence that he was entrapped. Because we are not left with a definite and firm conviction that a mistake has been made, we disagree.

Entrapment "is not a defense that negates an essential element of the charged crime. Instead, it presents facts that are collateral to the crime that justify barring the defendant's prosecution." *People v Hartwick*, 498 Mich 192, 214; 870 NW2d 37 (2015) (quotation marks and citation omitted). Two forms of entrapment are recognized under Michigan law as defined by a "modified objective test." *Johnson*, 466 Mich at 508. Under this test, "a defendant is considered entrapped if either (1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances or (2) the police engaged in conduct so

reprehensible that it cannot be tolerated." *Id*. at 498. There is no entrapment, however, if the police merely provide the defendant with the opportunity to commit the offense. *Id*.

In the first form of entrapment—impermissible inducement—the court considers 12 factors. *Id*. at 498-499.[2] These factors include:

> (1) whether there existed appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any government pressure existed, (8) whether there existed sexual favors, (9) whether there were any threats of arrest, (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted. [*Id*. at 498-499.]

This list of factors in not exclusive. *People v Juillet*, 439 Mich 34, 57; 475 NW2d 786 (1991) (opinion by BRICKLEY, J.)

When an informant is involved, the inquiry is whether "a normally law-abiding person in [defendant's] circumstances would be induced into committing the crime charged because of the actions of the police through their paid informant." *Id*. at 65-66. "Only when the defendant can prove that the government agents engaged in activities that would impermissibly manufacture or instigate a crime will the defense of entrapment prevail." *Id*. at 61. In this case, the CI was not paid, but participated in the investigation for the possibility of lenient treatment for criminal charges she was facing. The CI, who was acting under the supervision and encouragement of Deputy Vroon throughout the entire text-message exchange with defendant, was properly treated as a government agent for the purpose of determining the existence of entrapment.

The trial court's finding that defendant was entrapped was not clearly erroneous. In this case, the trial court made findings for each of the 12 factors. The trial court found that factors 1, 2, 3, 6, 9, and 10 did not favor defendant or were not applicable. The trial court found that factors, 4, 5, 7, 8, 11, and 12 weighed in defendant's favor.

---

[2] The second form of entrapment—reprehensible police conduct—is not at issue in this appeal. Defendant did not raise this form of entrapment in the trial court, and the trial court made no finding under the second form. Although the prosecution states in the conclusions of its application for leave to appeal and appellate brief that the police did not engage in reprehensible conduct, the prosecution provided no substantive argument regarding reprehensible police conduct. For these reasons and because the prosecution's appeal is limited only to the issues raised and addressed in its application, see MCR 7.205(E)(4), we will only address the first form of entrapment.

As noted by the trial court, several of the factors do not weigh in defendant's favor. Specifically, no record evidence supported that the CI appealed to defendant's sympathy as a friend. Additionally, defendant was known to commit the charged crime in light of his criminal history and the testimony of the CI. Indeed, the CI testified that defendant was her drug dealer and other text messages found on defendant's phone discussed him exchanging sex for drugs. Further, there was no lapse between the investigation and defendant's arrest, defendant was not given a guarantee that his alleged acts were legal, defendant was not threatened with arrest, and the government did not escalate defendant's criminal culpability. Although these factors weighed against a finding of entrapment or were inapplicable, the trial court concluded the other factors supported that defendant was entrapped.

The existence of the offer of sexual favors strongly weighed in defendant's favor. Defendant and the CI had a preexisting relationship as a drug seller and buyer. The CI testified that she had no history of a sexual relationship with defendant before the text-message exchange; however, she was aware that defendant had wanted to have a sexual relationship with her. The text-message communications demonstrate that the CI leveraged and exploited defendant's interest in a sexual relationship with her to entice him into the drug sale.

Specifically, the record indicates in the first 46 minutes that texts were exchanged between the CI and defendant, the CI sent 9 texts and defendant sent 5. All these text messages were related to drugs in one manner or another. The text-message exchange began with the CI offering to pay money she already owed defendant from a previous drug sale and offering to purchase additional drugs from him. Defendant initially expressed interest in the sale, but told the CI that she could send him money via the phone application, Cash App. Defendant became suspicious of the CI and stopped responding to her after he told her "she sound[ed] like the police." Over approximately the next half hour, the CI sent three text messages without response from defendant.

In a fourth and fifth text message, the CI shifted tactics and stated she had a hotel room and then offered defendant sexual favors in the following text message exchange:

>  4:43 p.m.        CI:        give you something from me for all the trouble
>
>  4:47 p.m.        Defendant:        Stop playing with me u know damn well I will come now for the right gift from you
>
>  4:48 p.m.        CI:        Come on then. I'll f*** you when u get here. For the trouble lee
>
>  4:49 p.m.        Defendant:        U are lying to me
>
>  4:50 p.m.        CI:        No I'm not. Why you thibk that? I'm dead serious. I've been down a min so come threw

From that point forward, until 7:44 p.m. when the defendant arrived at the motel, the CI and defendant exchanged 43 texts. Many of these related to sex and in several of them the CI advised that either she now specifically wanted to have sex or communicated to the defendant she "always wanted to f*** you" in the past." This factor weighed in favor of a finding of entrapment.

-4-

Also weighing in defendant's favor is the fact that the CI's sexual communication with defendant was done under the supervision and control of Deputy Vroon. The CI was incarcerated and was motivated to avoid a prison sentence. She approached Deputy Vroon in an attempt to secure a favorable plea deal. Deputy Vroon had the CI contact defendant to set up a drug sale. He told the CI to communicate with defendant how she normally would. Deputy Vroon approved the text messages the CI sent to defendant or at least supervised each message she sent to defendant. Throughout the text-message communications, Deputy Vroon permitted or tacitly approved the CI sending defendant sexually explicit messages. Although Deputy Vroon permitted the CI to continuously send defendant the sexually explicit messages, Deputy Vroon prohibited her from further escalating the circumstances by accepting defendant's request for sexually explicit photos. The record evidence supported that the CI enticed defendant with sexual favors at the direction of a police officer. This factor weighed in favor of a finding of entrapment.

The police officer's targeting of defendant also weighed in favor of an entrapment finding. The only individual targeted in the investigation was defendant. The investigation of defendant only occurred because of the CI's communication with Deputy Vroon after she informed him that defendant was her drug dealer. This factor weighed in defendant's favor.

The trial court also found that the CI's leveraging of sexual favors constituted an inducement that would make the commission of the crime unusually attractive to a law-abiding person. The trial court explained that generally the offer of sexual favors would make the offer more attractive to the average law-abiding person and that the particular circumstances of this case would make the commission of the crime unusually attractive to a hypothetical law-abiding person. This case has the additional unusual factor that the offer of sexual favors was made by the CI toward someone she did not have a sexual relationship with, but who she knew had expressed a preexisting desire to engage in a sexual relationship with her. Because of the unique circumstances of this case, we do not conclude that the trial court's conclusion that this factor weighed in defendant's favor was clearly erroneous.

Under several of the factors, namely factors 5 and 7, the trial court considered the pressure law enforcement exerted over the CI. Our Supreme Court has previously explained that, while other jurisdictions may recognize pressure on the informant as a factor supporting an entrapment defense, under the Michigan test, the pressure law enforcement exert on informants has no bearing on whether a defendant was entrapped. *Id*. at 63. Rather, the focus remains on the level of pressure exerted against the defendant. *Id*. When applied to defendant, we conclude factors 5 and 7 are inapplicable or do not weigh in favor of a finding of entrapment

This Court's review of the trial court's finding of facts and application of the law to those facts is reviewed for clear error. *Jade*, ___ Mich App at ___; slip op at 6. The trial court acknowledged that multiple factors did not weigh in defendant's favor or were inapplicable, but after concluded that several others weighed in defendant's favor, held that defendant was entrapped. Even with the trial court's error in its analysis of factors 4, 5, and 7, we are not left with a definite and firm conviction that a mistake was made. *Johnson*, 466 Mich at 498. The investigation in this case was specifically and solely targeted at defendant. Defendant and the CI had a preexisting relationship as drug dealer and buyer. This relationship was not sexual in nature, but the CI knew that defendant was interested in a sexual relationship with her. When the CI's attempt to solicit a drug sale from defendant by offering to pay a debt she owed him and by offering

additional money did not succeed, the CI, under the direct supervision of a police officer, then leveraged defendant's preexisting sexual interest in her to entice him to sell her drugs.  Thereafter, the conversation between defendant and the CI shifted primarily to his desire to have sex with her.  We are not left with a definite and firm conviction that the trial court made a mistake when it concluded that defendant was entrapped.  Therefore, we conclude the trial court did not clearly err when it found defendant was entrapped.

Affirmed.


/s/ Thomas C. Cameron
/s/ James Robert Redford
/s/ Kristina Robinson Garrett